James A. GRAVES, Appellant,

v.

Leonard WINER, Appellee.

Court of Appeals of Kentucky.

Nov. 10, 1961.

Eblen, Howard & Milner, John M. Kelly, Lexington, for appellant.

George R. Smith, Lexington, for appellee.

PALMORE, Judge.

The appellant, Graves, offered a house and lot for sale at public auction. Winer, the appellee, was the successful bidder at a price of $9,650. The contract was reduced to writing, pursuant to which Winer paid $965 down and agreed to pay the balance of $8,675 on or before one month from date. He refused to perform and Graves brought this suit for specific per-

formance or, if that remedy should not be decreed, for damages. Winer counterclaimed for a cancellation of the contract by reason of various alleged misrepresentations ·and for recovery of the $965 down payment. This appeal is from a judgment upholding the contract, awarding Graves $1 and costs, and, in effect, awarding Winer a return of the down payment.

■ Two principal points are advanced for the appellant, (1) that he was entitled to a jury trial and (2) that he was entitled to more than nominal damages. We are of the opinion, however, that if the proof did not support an award of actual damages the judgment gave the plaintiff all that a jury could have given him, and he was not prejudiced by the trial by court. Cf. Ferguson v. Akers, 1915, 165 Ky. 289, 176 S.W. 1149, 1151; Combs v. Burt & Brabb Lumber Co., 1905, 27 Ky.Law Rep. 439, 85 S.W. 227. Hence we shall examine the second question first.

The contract was made on November 1, 1957, and this suit was filed on December 12, 1957. Following the taking of several depositions by plaintiff, and then a pretrial conference, on June 23, 1958, the trial court entered an order determining that plaintiff was not entitled to specific performance "but that the action should be tried upon plaintiff's alternative claim for damages and upon defendant's counterclaim for damages." The cause was then referred to the Master Commissioner for hearing and report of findings and conclusions. Plaintiff did not take issue with this denial of specific performance, but he did insist upon, and was denied, a trial by jury of the common law issues.

The case finally came on before the commissioner on January 5, 1959, following which the hearing was adjourned from time to time and further depositions were taken by both parties. When he closed in chief plaintiff had failed to put on any evidence of damages, but on February 25, 1959, the commissioner, over objection, permitted him to do so after defendant had rested. He then proceeded to prove such items as lost rentals and sums paid out in taxes, insurance and maintenance. After completion of all testimony on February 25, 1959, the evidence was transcribed and then considered by the commissioner, who filed his report on July 2, 1959. In this report the commissioner found that defendant had breached the contract but plaintiff had not proved any allowable damages and therefore could have only nominal recovery. He held defendant entitled to recover his deposit of $965 less the sum of $1 and costs.

On August 28, 1959, plaintiff again moved for a jury trial and tendered an amended complaint showing that he had sold the property in question at public auction on July 22, 1959, for the price of $8,500, thus establishing the amount of his principal item of damages. He asked $1,150 for his direct loss on the re-sale, $125 per month rent from December 1, 1957, to July 22, 1959, $140.56 costs of the second sale, $128.56 maintenance and insurance, and $84.72 taxes for the same period. On September 10, 1959, the trial court filed a written opinion confirming and adopting the commissioner's report and overruling plaintiff's motions. Judgment was entered accordingly.

■ For a breach by the vendee of a contract for the sale of land "the quantum of damages is the difference between the contract price and the actual value of the land on the date of the breach, provided the actual value is less than the contract price. In addition, interest may be awarded." Harmon v. Thompson, 1905, 119 Ky. 528, 27 Ky.Law Rep. 181, 84 S.W. 569, 573; Eaton v. Trautwein, 1941, 288 Ky. 97, 155 S.W.2d 474, 476. See also McBrayer v. Cohen, 1892, 92 Ky. 479, 13 Ky.Law Rep. 667, 18 S.W. 123, with respect to expenses incident to re-sale.

■ The object of compensatory damages is to put the injured party in the same condition, so far as money can do so, in which he would have been if the contract

had been duly performed. Oleck, Damages to Persons and Property, §§ 80, 229, 237, pp. 59, 439, 448. "The injured party is entitled to all such damages as arise naturally from the breach of the rights which that contract was contemplated to assure." Ibid., § 85, pp. 73–74. See also 15 Am.Jur. 442 (Damages, § 43); Hogg v. Edley, 1930, 236 Ky. 142, 32 S.W.2d 744.

■■ Where a vendor has an enforcible contract of sale and obtains specific performance, the allowance of interest on the unpaid portion of the purchase price for such period of time as the property unavoidably lay idle in his possession after the money was due would fairly recompense the vendor's temporary loss of income on his investment. However, if in lieu of specific performance he recovers only the value of his lost bargain, interest on that amount may not be adequate to make him whole. Therefore, we are not prepared to say that a jilted vendor cannot have his lost rents (less, perhaps, interest on so much of the purchase price as has been paid him) if he brings suit promptly and proves the reasonable rental value of the property. This probably would occur only in the unusual case where a vendor sues for specific performance but for some reason not theretofore apparent is relegated to damages only. That happened in this case. The appellant was entitled to specific performance. Though some courts recognize the power of equity to draw a line between entitlement to damages and entitlement to specific performance purely on the basis of discretion (see Pomeroy's Specific Performance of Contracts §§ 35–46; 81 C.J.S. Specific Performance § 163, pp. 778–782), we are of the view that if the vendor proves a cause of action for specific performance he is entitled to that relief unless the defendant is unable or persists in his refusal to perform. And until such time as it reasonably appears that he will be deprived of that particular remedy we do not think he should be penalized for holding the property in readiness to perform.

■ The appellant proved that before the sale on November 1, 1957, he had rented the property out at $125 per month and had been offered $100 to $125 per month for it afterwards, but that he did not re-rent it because he might then have been unable to perform the contract, which he intended to enforce specifically. The commissioner was of the opinion that since he did not obtain specific performance he never was entitled to it in the beginning, and hence had no legal reason not to re-rent the property immediately. He held also that in any event the testimony was insufficient to show the fair rental value of the property. We are inclined to concur in this latter conclusion. That appellant may have received a certain rental previously, though it would certainly support opinion testimony as to the reasonable rental value, is not of itself sufficient to prove it. Offers, of course, are not competent evidence of value. Cf. Brock v. Harlan County, 1944, 297 Ky. 113, 179 S.W.2d 202, 204.

■ In this case appellant cannot have his lost rents for the reason that he failed to prove them. But by virtue of his entitlement to the lost rents, had he proved them, he cannot recover taxes, insurance, and maintenance expenses, because these are chargeable against the gross rents in order to arrive at the net loss of income, which is the real measure of this item of damages. In other words, entitlement to gross rents presupposes that the maintenance expenses have been borne by the plaintiff.

So we come to this. Appellant failed to prove the fair market value of the property at the time the contract was breached, and he failed to prove the reasonable rental value of the property during the interim between the time the contract was to be performed and the time the trial court entered an order denying specific performance. Therefore, unless the trial court abused its discretion in refusing to allow his tendered amendment after the re-sale, he got from the court all that a jury could

have awarded him, which was nominal damages, hence he was not prejudiced by his deprival of a jury trial.

■■ Though CR 15.01 provides that leave to amend "shall be freely given when justice so requires," it is still discretionary with the trial court, whose ruling will not be disturbed unless it is clearly an abuse. Bradford v. Billington, Ky.1957, 299 S.W. 2d 601. In his written opinion the trial judge expressed the view that appellant had been accorded ample opportunity, after the denial of specific performance, to prove the fair market value of the property but never did so, nor did he ask an adjournment for the purpose of having it sold, but waited until after the commissioner's report had been made. Under these circumstances the court exercised its discretion in the negative, declining to allow the amendment. We cannot call this action a clear abuse.

In his report the commissioner did not undertake an analysis of the defendant's counterclaim for his $965 down payment. But in Ward Real Estate v. Childers, 1928, 223 Ky. 302, 3 S.W.2d 601, 602, it was held that "a party to an agreement to purchase property who has advanced money in part performance * * * and then refuses to proceed to the ultimate conclusion of the agreement, the other party being ready and willing to perform his part of the contract, is not entitled to recover his part of the money so advanced."

"It is the general rule that a deposit on a contract, or a partial payment of the purchase price of property bought at auction, or otherwise, may be recovered where the sale falls through because of some failure or fault of the vendor or the auction. * * * But the plaintiff must be free from the fault that defeated the deal, and, if he is to blame for the situation, he may not obtain relief." Robenson v. Yann, 1928, 224 Ky. 56, 5 S.W.2d 271, 274–5.

■ The two decisions just cited do not hold that the deposit is taken as liqui-

dated damages, and neither in those cases nor in this one did the contract so provide. They say simply that the defaulting vendee cannot get it back. Does this mean that if the vendor proves his actual damages he may recover them and retain the deposit as well? We think not, and that the amount retained must be set off against the damages awarded. If, however, the award of damages is less than the amount of the retained deposit, the vendee still may not recover the deposit, since under the rule of the aforementioned decisions he was never entitled to recover any of it in the first place. In this case the $965 deposit more than offsets the $1 damages, with the result that appellant is entitled to keep the deposit and recover his court costs.

Judgment reversed with directions to enter a new judgment in conformity with this opinion.